U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN 30 PM 2: 08

CLERK
BY ⎯⎯⎯⎯⎯⎯⎯⎯
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SCOTT C., )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-00109
)
COMMISSIONER OF SOCIAL SECURITY, )
)
Defendant. )

# OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND GRANTING THE COMMISSIONER'S MOTION TO AFFIRM
(Docs. 7 & 8)

Plaintiff Scott Murry Chaloux is a claimant for Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that he is not disabled.[1] (Doc. 7.) The Commissioner moves to affirm. (Doc. 8.) Plaintiff replied on May 10, 2021, at which time the court took the pending motions under advisement.

After his application for SSI was denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Thomas Merrill found Plaintiff was ineligible for benefits based on his conclusion that Plaintiff can perform jobs that exist in significant numbers in the national economy and was therefore

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

not disabled between his application date of June 6, 2017, through April 3, 2019, the date of his decision.

Plaintiff contends that the ALJ erred by finding that Plaintiff could engage in routine and ordinary social interaction with coworkers, supervisors, and the public despite opinions from medical experts who opined that Plaintiff had greater limitations. Plaintiff seeks a remand with instructions to issue a new decision based on substantial evidence and proper legal standards.

Plaintiff is represented by Bryden F. Dow, Esq. The Commissioner is represented by Special Assistant United States Attorney Hugh Dun Rappaport.

## I.      Procedural History.

Plaintiff filed his initial application for SSI on June 6, 2017, alleging a disability onset date of September 1, 2014, and identifying the following disabling conditions: back and leg pain, sleep deprivation due to pain, learning disability, depression, and anxiety. His claim was denied on September 7, 2017, and was denied upon reconsideration on October 26, 2017. Plaintiff timely filed a request for a hearing, which was held before ALJ Merrill via videoconference on May 23, 2018. Both Plaintiff and Vocational Expert ("VE") Lynn Paulson appeared. The hearing was continued in order to obtain additional medical evidence and for Plaintiff to obtain representation. On March 20, 2019, a second hearing was held before ALJ Merrill via videoconference. Plaintiff appeared in Burlington, Vermont and was represented by counsel. Plaintiff, impartial medical expert John Kwock, M.D., and VE Elizabeth C. Laflamme testified.

On April 3, 2019, ALJ Merrill issued an unfavorable decision. Plaintiff timely filed an administrative appeal. The Appeals Council denied review on June 5, 2020. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.     ALJ Merrill's April 3, 2019 Decision.

In order to receive SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, ALJ Merrill found Plaintiff had not engaged in substantial gainful activity since June 6, 2017, the date of his application. At Step Two, he concluded Plaintiff had the following severe impairments: degenerative disc disease/degenerative joint disease (lumbar spine, mild, status post fusion); obesity; and adjustment disorder with mixed anxiety and depressed mood. Although the ALJ noted that Plaintiff alleged disability in part due to a learning disability, he found this impairment was not severe because a Mini-Mental State Examination score that supported a diagnosis of learning disorder was invalid because Plaintiff had less than a 9th grade education. The ALJ also found that other unspecified diagnoses in the record were non-severe because there was no treatment provider or other opinion indicating that these diagnoses caused more than minimal limitations in Plaintiff's ability to perform basic work activities.

At Step Three, ALJ Merrill found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. The ALJ considered Listing 1.04, but found that the evidence did not show a

nerve root compression with resulting limitation of motion of the spine or motor loss, or spinal arachnoiditis or lumbar spinal stenosis. The ALJ further found that, while treating sources suggested that morbid obesity affected Plaintiff's overall condition, Plaintiff remained fully weight bearing and did not have abnormal neurological function and therefore did not meet or equal the severity of an impairment described in Appendix 1.

Plaintiff's mental health challenges are the crux of this appeal. As the Commissioner points out, Plaintiff had not pursued mental health treatment from the date of his application, June 6, 2017, until the ALJ's decision on April 3, 2019 with the exception of mandated anger management treatment and a single meeting with a mental health provider after his mother's death, both of which occurred prior to June 2017. Plaintiff has never been fired or laid off from a job for failure to get along with co-workers and supervisors and did not, on a routine basis, have problems getting along with family members, friends, neighbors, and other individuals. He was able to get along with authority figures, maintain a long-term romantic relationship, and engage in routine social encounters while running errands and grocery shopping.

With regard to Plaintiff's mental health conditions, the ALJ considered Listings 12.04 and 12.06 and found that Plaintiff had a mild limitation in understanding, remembering, or applying information; moderate limitations in interacting with others and concentrating, persisting, or maintaining pace; and no limitation in adapting or managing himself. The ALJ found that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 and 12.06. The ALJ also noted that Plaintiff had the burden of proof at Step Three but did not argue that any of his conditions met or equaled any Listing.

At Step Four, ALJ Merrill determined Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 416.967(b), with the ability to lift/carry up to 20 pounds occasionally, 10 pound[s] frequently; sit for up to 6 hours, and stand/walk for up to 6 hours, in an 8-hour workday; and frequent pushing/pulling with his feet to operate controls bilaterally. He is limited to frequent climbing ramps and stairs, balancing and kneeling,

occasional stooping, crouching, and climbing ladders, ropes and scaffolds, and no crawling. He is limited to occasional exposure to unprotected heights and moving mechanical parts. He is able to understand, remember and carry out simple tasks, and sustain concentration, persistence and pace for simple tasks for 2-hour blocks, over an 8-hour workday/40-hour workweek. He is limited from intense social interactions, but is able to tolerate routine and ordinary social interactions with coworkers, supervisors and general public.

(AR 16.)

In light of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform his past relevant work as a home health aide as described and as performed generally in the economy. He noted that Plaintiff was 46 years old on the date the application was filed, placing him in the "younger individual age 18-49" category as defined by the regulations, and that Plaintiff had "a marginal education" and was able to communicate in English. *Id.* at 23.

Considering Plaintiff's age, education, work experience, and RFC, ALJ Merrill determined at Step Five that jobs exist in significant numbers in the national economy which he could perform, including price marker, housekeeper, and laundry classifier. As a result, ALJ Merrill concluded Plaintiff was not disabled from June 6, 2017, through April 3, 2019, the date of his decision.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred in Finding that Plaintiff Could Engage in Routine and Ordinary Social Interactions with Coworkers, Supervisors, and the General Public.

Plaintiff asserts that the ALJ erred in finding that Plaintiff could engage in routine and ordinary social interactions with coworkers, supervisors, and the general public because state agency consultants John Petty, Psy.D., and Edward Hurley, Ph.D. opined that Plaintiff was limited to engaging in "brief, infrequent, and non-intense interactions w[ith] supervisors and coworkers." (AR 87, 102.)

An RFC determination represents "the most [a claimant] can still do despite [their] limitations[,]" and is determined based on "all the relevant evidence" in the record, including evidence of both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a)(1)-(2). "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)) (alteration in original). "[A]n ALJ is free . . . to choose between properly submitted medical opinions" in rendering his or her analysis, *Balsamo v. Chater*, 142 F.3d 75, 81

(2d Cir. 1998) (internal alterations, quotation marks, and citations omitted), and need not "reconcile every conflicting shred of medical testimony" as long as the ALJ "acknowledge[s] relevant evidence or explain[s] his implicit rejection of it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000) (citations omitted).

Although the ALJ found the medical opinions of Drs. Petty and Hurley persuasive, he limited Plaintiff's RFC to routine and ordinary social interaction with coworkers, supervisors, and the general public. He provided no explanation for rejecting Dr. Petty's and Dr. Hurley's opinions recommending a more restrictive limitation of brief and infrequent interactions with supervisors and coworkers. "[A]n ALJ may not 'cherry pick' medical opinions that support his or her opinion while ignoring opinions that do not." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (internal quotation marks omitted). "The obligation to explain why certain elements of an opinion were not adopted is triggered when 'the RFC assessment conflicts with an opinion from a medical source[.]'" *Marshall L. v. Berryhill*, 2018 WL 2192191, at *11 (W.D.N.Y. May 14, 2018) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) (alteration in original).

While the Commissioner argues that the ALJ's decision was supported by substantial evidence, including Plaintiff's normal mental status exams, his lack of mental health treatment, and his own testimony about his ability to tolerate social interaction, this does not obviate the ALJ's obligation to explain his rejection of certain elements of medical opinions that he found persuasive. The Commissioner admits that the ALJ "could have expressed himself more clearly" and that "he rejected the assessments regarding 'brief, infrequent' interactions." (Doc. 8 at 7.) It was thus error for the ALJ to fail to explain why he did not adopt the state agency consultants' limitations on social interaction. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable."). A remand is thus required unless the error was harmless.

In this case, the ALJ's error was harmless because the positions identified by the VE do not require significant social interaction. The Dictionary of Occupational Titles

("DOT") "provides a code, numbered 0-8, for the type of social interaction each occupation requires." *Habschied v. Berryhill*, 2019 WL 1366040, at *9 (W.D.N.Y. March 26, 2019) (citation omitted). The positions of price marker, housekeeper, and laundry classifier each list the type of social interaction required as 8, which is described as "[a]ttending to the work assignment instructions or orders of supervisor. []No immediate response required unless clarification of instructions or orders is needed." Dictionary of Occupational Titles, Appendix B, 1991 WL 688701 (1991). A position with a social interaction level of 8 indicates that the degree of relation to people required for that position is "Not Significant[.]" Dictionary of Occupational Titles, § 209.587-034, 1991 WL 671802; Dictionary of Occupation Titles, § 323.687-014, 1991 WL 672783; Dictionary of Occupational Titles, § 361.687-014, 1991 WL 672991.

Courts have held that "[l]evel 8 interaction is compatible with a[n] RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public." *Alie v. Berryhill*, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017); *see Sanchez v. Colvin*, 2014 WL 5147793, at *16 (M.D. Pa. Oct. 14, 2014) (holding that "a position with this 'people' code is one that can be performed despite limitations in interacting with supervisors"); *Shorey v. Astrue*, 2012 WL 3475790, at *6 (D. Me. July 13, 2012) (holding that because the "descriptions of [certain positions] do not mention dealing with people and identify the presence of taking instructions from and helping people in a 'Not Significant' amount[,]" the "inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the administrative law judge's hypothetical question would not have excluded" those positions).

Because the jobs cited by the VE do not involve significant interaction with coworkers and supervisors, the ALJ's failure to explain his deviation from the limitations on social interaction opined by Drs. Petty and Hurley was harmless. *See Whitehorne v. Comm'r of Soc. Sec.*, 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020) (holding that "any failure by the ALJ to include a specific limitation relating to [plaintiff's] ability to interact with supervisors in the RFC was harmless because the positions identified by the vocational expert do not require more than occasional interaction with supervisors");

*Martinez Reyes v. Comm'r of Soc. Sec.*, 2019 WL 3369255, at *7 (W.D.N.Y. July 26, 2019) (holding that "because the jobs cited by the VE involve only occasional interaction with supervisors, the ALJ's failure to address [medical expert's] opinion as to plaintiff's ability to interact with supervisors is not grounds for remand"); *Shorey*, 2012 WL 3475790, at *6 (finding that "inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the administrative law judge's hypothetical question would not have excluded two of the three jobs on which the administrative law judge relied, and any error in omitting that limitation from the question and from the RFC can only have been harmless").

Although Plaintiff additionally makes a "standard objection" to the qualifications of VE Laflamme, he does not offer an argument in support of that objection. (AR 62.) To the extent that Plaintiff intends to argue that the ALJ erred in relying on the testimony of the VE because the DOT is unreliable and the VE's resume does not indicate that she has the ability to estimate the number of jobs in the economy, her resume does state that she has been a VE for the Office of Disability Adjudication and Review since 2012 and she testified at the hearing that she was familiar with the terminology and definitions used by the SSA as well as the DOT. "[A] vocational expert is not required to identify with specificity the figures or sources supporting [her] conclusion, at least where [s]he identified the sources generally." *McIntyre*, 758 F.3d at 152 (finding that "the ALJ reasonably credited" the VE's testimony where it was "given on the basis of the expert's professional experience and clinical judgment").

Moreover, "[t]he VE's reliance on the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules." *Strong v. Berryhill*, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019). While Plaintiff maintains that the DOT is "so old that the Bureau of Labor [] Statistics considers it obsolete," (Doc. 7 at 5), and that the VE must therefore have specific training in "estimat[ing] the number of jobs in a given occupation[,]" (Doc. 9 at 2), "the Social Security Administration continues to treat the DOT as a 'reliable' source

9

of job data and takes administrative notice of its contents." *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018) (citing 20 C.F.R. § 404.1566(d)(1)).

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion for an order reversing the decision of the Commissioner (Doc. 7) and GRANTS the Commissioner's motion to affirm (Doc. 8).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 30th day of June, 2021.

Christina Reiss, District Judge
United States District Court